## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ANDRA "ANA" CHERI ROSE, CIELO JEAN "CJ" GIBSON, CLAUDIA SAMPEDRO, GALLIENNE NABILA and STEPHANIE RAO, <br><br> Plaintiffs, <br><br> v. <br><br> TEXT ULTRA LOUNGE, INC d/b/a TEXT ULTRA LOUNGE ATL, <br><br> Defendant. | Case No. <br><br> **COMPLAINT** <br><br> **JURY DEMAND** |

Plaintiffs ANDRA "ANA" CHERI ROSE, CIELO JEAN "CJ" GIBSON, CLAUDIA SAMPEDRO, GALLIENNE NABILA and STEPHANIE RAO, (collectively, "Plaintiffs"), as and for their Complaint against TEXT ULTRA LOUNGE, INC, d/b/a TEXT ULTRA LOUNGE ATL ("Defendant") respectfully allege as follows:

### BACKGROUND

1.     This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their bar, TEXT ULTRA LOUNGE ATL located at 3711 N Decatur Rd #106, Decatur, Georgia 30032 (hereinafter referred to as the "Bar" or "Text Ultra").

2.     As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a)

Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Common Law Right of Publicity; d) Common Law Right of Privacy – False Light; e) Violation of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 et seq.; f) Defamation; g) Negligence and Respondeat Superior; h) Conversion; i) Unjust Enrichment; and j) Quantum Meruit.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, Defendant TEXT ULTRA LOUNGE, INC, is a corporation formed under the laws of the state of Georgia, with its principal place of business located at 37111 N Decatur Rd #106, Decatur, Georgia, 30032. Upon information and belief, TEXT ULTRA LOUNGE, INC operates TEXT ULTRA LOUNGE ATL, which is located at 3711 N Decatur Rd #106, Decatur, Georgia 30032.

8.      Venue is proper in the United States District Court for the Northern District of Georgia because Defendant's principal place of business is located in Decatur, Georgia, DeKalb County.

9.      A significant portion of the alleged causes of action arose and accrued

in Decatur, Georgia and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Decatur, Georgia.

## PARTIES

### *Plaintiffs*

10.    Plaintiff Andra "Ana" Cheri Rose ("Cheri") is a well-known professional model, and a resident of Orange County, California.

11.    Plaintiff Cielo Jean "CJ" Gibson ("Gibson") is a well-known professional model, and a resident of Los Angeles County, California.

12.    Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

13.    Plaintiff Gallienne Nabila ("Nabila") is a well-known professional model, and a resident of Los Angeles County, California.

14.    Plaintiff Stephanie Rao ("Rao") is a well-known professional model, and a resident of Los Angeles County, California.

### *Defendant*

15.    Defendant, TEXT ULTRA LOUNGE, INC d/b/a TEXT ULTRA LOUNGE ATL d/b/a Text Ultra, is a corporation formed under the laws of the state of Georgia and registered to conduct business in Georgia. During times relevant to this action, TEXT ULTRA LOUNGE, INC operated TEXT ULTRA LOUNGE ATL.

16.    Service of process may be perfected upon Defendant TEXT ULTRA LOUNGE, INC d/b/a TEXT ULTRA LOUNGE ATL by serving the registered agent for service of process, Natasha A. Smith, CPA LLC, who can be located at 2302 Parklake Drive NE, Ste 660, Atlanta, GA 30345.

## FACTUAL ALLEGATIONS

17.    Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and

individuals for the purpose of advertising products and services.

18.    Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

19.    Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

20.    In the case of each Plaintiff, this apparent claim was false.

21.    Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

22.    No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

23.    Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

24.    Cheri is a published model with companies such as Monster Energy, K&N Filters, Moskova Underwear and Ultimate Armwrestling League. She became a brand ambassador for Shredz. She was featured as a Maxim Instagram Girl of the Week, and was also Playboy's October 2015 Playmate of the Month. She has made appearances in numerous TV series, including Booty Boot Camp, Nuclear Family, Playmate Playback and many more. She is also the owner of Change Fate Active

formerly known as Cheri Fit activewear, which sells fit apparel. Cheri currently has over 12.5 million followers on Instagram, over 31,300 followers on Twitter, and over 105,000 followers on Facebook. [1]

25.    That we know of, Cheri is depicted in the photos in Exhibit "A" to promote Text Ultra on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Cheri was either an employee working at Text Ultra, that she endorsed Text Ultra, or that she was otherwise associated or affiliated with Text Ultra.

26.    Cheri has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

27.    Gibson is an American model who enjoys great success in her industry. Gibson was the Import Tuner magazine Model Search winner. Gibson is currently a model for the Falken Drift Team and can be seen at Formula Drift events. Gibson has also appeared in several magazines including FHM, American Curves, Supreme, MuscleMag International, Muscle & Fitness, and Teeze, Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing. Gibson has 71,600 Instagram followers.

28.    That we know of, Gibson is depicted in the photos in Exhibit "B" to promote Text Ultra on its Facebook page and Instagram account. These Images were

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

intentionally altered to make it appear that Gibson was either an employee working at Text Ultra, that she endorsed Text Ultra, or that she was otherwise associated or affiliated with Text Ultra.

29.    Gibson has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

30.    Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at age 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as Nine 5 Four, Shock, Face to Face and Mixed. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro has three children and is married to former Green Bay's star defensive end Julius Peppers. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined 150,000 fans on Facebook and X (formerly known as Twitter).

31.    That we know of, Sampedro is depicted in the photos in Exhibit "C" to promote Text Ultra on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Sampedro was either an employee working at Text Ultra, that she endorsed Text Ultra, or that she was otherwise associated or affiliated with Text Ultra.

32.    Sampedro has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer,

damages as a result of same.

33.    Nabila is an actress and model residing in Los Angeles, California. From a young age she participated in pageants, public speaking, dance, community service work, and singing. Nabila has been in the entertainment industry for over a decade working with brands such as Fashion Nova. She is currently signed to Wilhelmina Los Angeles and has a nonprofit geared towards the empowerment and advancement of young women. Nabila has over 2 million social media followers.

34.    That we know of, Nabila is depicted in the photos in Exhibit "D" to promote Text Ultra on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Nabila was either an employee working at Text Ultra, that she endorsed Text Ultra, or that she was otherwise associated or affiliated with Text Ultra.

35.    Nabila has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

36.    Rao who is originally from Miami, FL currently resides in Los Angeles and is an influencer/model. She is currently representing Fashion Nova and has previously worked for Shein & PrettyLittleThing. She has appeared alongside Kim Kardashian in a Carolina Lemke glasses advertisement as well as other high profile ad campaigns. She has her own website which focuses on providing a fitness journey to her clients and promoting physical, mental, and spiritual wellness. Rao has over 1.1 million Instagram followers.

37.    That we know of, Rao is depicted in the photos in Exhibit "E" to promote Text Ultra on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Rao was either an employee working at

Text Ultra, that she endorsed Text Ultra, or that she was otherwise associated or affiliated with Text Ultra.

38.     Rao has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

39.     Defendant operates (or operated, during the relevant time period,) a so-called Bar, where it is (or was) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

40.     Defendant owns, operates, and controls Text Ultra's social media accounts, including its Facebook, Twitter, and Instagram accounts.

41.     Defendant used Text Ultra's Facebook, Twitter, and Instagram accounts to promote Text Ultra's, and to attract patrons.

42.     Defendant did this for its own commercial and financial benefit.

43.     Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Text Ultra, endorsed Text Ultra, or was otherwise associated or affiliated with Text Ultra.

44.     Defendant used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Text Ultra to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

45.     Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Text Ultra, and at no point have any of the Plaintiffs

ever endorsed Text Ultra or otherwise been affiliated or associated with Text Ultra.

46.    All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

47.    Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

48.    Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

### Standard Business Practices in the Modeling Industry

49.    It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

50.    The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

51.    Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

### Defendant's Misappropriation of Plaintiffs' Images

52.    Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Text Ultra.

53.    Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

54.    In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Text Ultra.

55.    At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

56.    No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

57.    No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Text Ultra's website, Twitter, Facebook, or Instagram accounts.

58.    Defendant used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)

59.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

60.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein

61.    Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

62.    Thus, this was done in furtherance of Defendant's commercial benefit.

63.    Plaintiffs are in the business of commercializing their identity and

selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

64.     Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

65.     As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

66.     Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

67.     Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed its establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or

affiliation with Defendant 's establishment.

68.    Defendant knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

69.    Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

70.    As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

71.    Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

72.    Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

73.    WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION

**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

74.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

75.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

76.    Defendant used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

77.    Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

78.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant events and activities and/or that Plaintiffs

would participate in or appear at the specific events promoted in the advertisements.

79.     Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant establishment events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities.

80.     Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant establishment events and activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's establishment, visit Defendant's establishment, and participate in events at Defendant's establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendant's establishment, visit Defendant's establishment and take part in the events at Defendant's establishment.

81.     Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and their activities and attracting clientele to Defendant's establishment.

82.    Defendant knew or should have known that their unauthorized use of Plaintiff's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

83.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

84.    Defendant's wrongful conduct as described herein was willful.

85.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

86.    Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

87.    The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise Defendant's businesses.

88.    Defendant has caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

89.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Common Law Right of Publicity)

90.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

91.     Defendant has appropriated each Plaintiffs' likeness for Defendant's commercial purposes without authority or consent from Plaintiffs.

92.     Defendant misappropriated Plaintiffs' likenesses by publishing their Images on Defendant's website or related social media accounts as part of Defendant's advertising campaign.

93.     Defendant's website and social media accounts were designed to advertise and attract business to Defendant and generate revenue for Defendant.

94.     Plaintiffs are informed and believes and hereon alleges that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

95.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

96.     Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

97.     Upon information and belief, Defendant's use of Plaintiffs' Images did in fact attract clientele and generate business for Defendant's establishment.

98.     At no point did Defendant ever seek or receive permission or consent to use any Plaintiff's Image for any purpose.

99.     Defendant was at all relevant times aware that it had never received any Plaintiffs' permission or consent to use their Images in any medium for any purpose.

100.    At no point did Defendant ever compensate Plaintiffs for its unauthorized use of their Images.

101.    Plaintiffs have been damaged in amounts to be proved at trial and are also entitled to punitive damages under O.C.G.A. § 51-12-5.1 based on Defendant's actions.

## FOURTH CAUSE OF ACTION
### (Common Law Right of Privacy – False Light)

102.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

103.    As set forth hereon, each Plaintiff has and had at the time of Defendant's misappropriation a commercial interest in their image, photo, persona and likeness.

104.    Said commercial interest was developed by each Plaintiff through their investment of time, effort and money in their career, image, persona and likeness.

105.    As set forth herein, Defendant used each Plaintiffs' image and likeness for commercial purposes by using same in advertising.

106.    Defendant did so without any Plaintiffs' consent, written or otherwise.

107.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

108.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness were altered so as to reach a new audience and/or promote a different product.

109.    Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote Defendant.

110.    At no point did Defendant ever compensate Plaintiffs for its use of their

Images.

111.   No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

**FIFTH CAUSE OF ACTION**
**(Violation of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 et seq.)**

112.   Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

113.   Defendant operated Defendant's website and social media accounts in order to promote Defendant, to attract clientele thereto, and to thereby generate revenue for Defendant.

114.   As such, Defendant's operation of the website and social media accounts, and its publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Georgia.

115.   Defendant's published Plaintiffs' Images on Defendant's website and social media accounts in order to create the false impression that Plaintiffs were working for, affiliated with, or endorsing Defendant's business.

116.   As such, Defendant's intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Defendant's business.

117.   Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under Georgia law.

118.   Defendant's advertising practices offends the public policy of Georgia insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendant's commercial benefit.

119.   Defendant's advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own

commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with Defendant's business.

120.    Defendant's advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs work for, endorse, or are otherwise affiliated with, Defendant.

121.    There are no benefits to Defendant's advertising practices as set forth hereon except a benefit to Defendant's own commercial interests.

122.    As a result of Defendant's unauthorized and misleading publication of Plaintiffs' Images on Defendant's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

123.    As a result of Defendant's unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages

## SIXTH CAUSE OF ACTION
### (Defamation)

124.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

125.    As detailed throughout this Complaint, Defendant has published altered Images of Plaintiffs in order to promote Defendant to the general public and potential clientele.

126.    Defendant's publication of said Images constitutes a representation that Plaintiffs were either employed by Defendant, that they endorsed Defendant, or that they had some affiliation with Defendant.

127.    None of these representations were true.

128.    In publishing Plaintiffs' altered Images, it was Defendant's intention to

create a false impression to the general public that Plaintiffs worked for, endorsed, or were somehow affiliated with Defendant.

129. Defendant was at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by Defendant, had no affiliation with Defendant, had not consented to the use of their Images, and had not been compensated for the use of their Images.

130. In the alternative, Defendant published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by Defendant, had no affiliation with Defendant, had not consented to the use of their Images, and had not been compensated for the use of their Images.

131. Despite Defendant's knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

132. Defendant's publication of Plaintiffs' Images constitutes defamation under Georgia law because said publication falsely accuses Plaintiffs of having acted in a manner—i.e., working for or endorsing Defendant's establishment—which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

133. Defendant's publication of Plaintiffs' Images likewise constitutes defamation per se under Georgia law because said publication would tend to injure each Plaintiff in their trade, business, and profession as a professional model.

134. This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that they were somehow working for, affiliated with, or endorsing Defendant's business - an inference which Defendant's publication of the Images

support.

135.   Defendant's publication of Plaintiffs' Images likewise constitutes defamation per se under Georgia law because, insofar as said publication falsely portrays each of the Plaintiffs working for, affiliated with, or endorsing Defendant's business, it imputes unchastity to her.

136.   Defendant's publication of Plaintiffs' Image caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Negligence and Respondeat Superior)

137.   Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

138.   Plaintiffs are further informed and believe and hereon allege that Defendant maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

139.   Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that its promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

140.   Defendant owed a duty of care to Plaintiffs to ensure that its advertising and promotional materials and practices did not infringe on their property and publicity rights.

141.   Defendant further owed a duty of care to consumers at large to ensure

that their promotional and/or advertising materials and campaigns were not deceptive or misleading in its advertising practices.

142.   Defendant breached its duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

143.   Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and Illinois law, were not violated. Defendant breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

144.   Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

145.   As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Conversion)

146.   Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

147.    Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

148.   By the conduct detailed above, Defendant converted Plaintiffs' property rights in their Images for its own use and financial gain Images for its own

use and financial gain.

149.    As a result of Defendant's unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

150.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

151.    As set forth in detail above, Defendant published Plaintiffs' Images in order to promote Defendant to the general public and potential clientele.

152.    Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were working for, affiliated with, or endorsing Defendant's business.

153.    Defendant's purpose in publishing Plaintiffs' Images was to benefit commercially due to its purported association with, employment of, and/or endorsement by Plaintiffs.

154.    Upon information and belief, Defendant did in fact benefit commercially due to its unauthorized use of Plaintiffs' Images.

155.    Defendant has been enriched by its unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to Defendant.

156.    Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

157.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

158.   Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

159.   Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

160.   Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

161.   Although Defendant has availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at Defendant, endorse Defendant, or are otherwise affiliated with Defendant, Defendant has not compensated Plaintiffs.

162.   Plaintiffs are therefore entitled to reasonable compensation for Defendant's unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Text Ultra's Bar;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and S.C. Code Ann. § 39-5-10, *et seq.*;

(e) For such other and further relief as the Court may deem just and proper. Dated: January 28, 2025.

/s/ John V. Golaszewski

John V. Golaszewski
New York Bar No. 4121091
Pro Hac Vice Application Pending
**THE CASAS LAW FIRM, P.C.**
1740 Broadway, 15th fl.
New York, NY 10019
Tel: 855-267-4457
Fax: 855-220-9626
john@talentrights.law
**Pro Hac Vice Application
Forthcoming**

/s/ Douglas B. Chanco

Douglas B. Chanco
Bar Number: 139711
**JD LAW GROUP**
912 Holcomb Bridge Rd. Suite 203
Roswell, GA. 30076
(404) 842-0909
doug@jdgrouplaw.com

**Attorneys for the Plaintiffs**